**STATE of Tennessee, Appellee,**

v.

**Billie BULLINGTON, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Oct. 23, 1985.

Permission to Appeal Denied by Supreme Court Dec. 30, 1985.

Charles S. Kelly, Dyersburg, for appellant.

W.J. Michael Cody, Atty. Gen., Ann Lacy Johns, Asst. Atty. Gen., Nashville, Jim W. Horner, Dist. Atty. Gen., Lyman Ingram, Asst. Dist. Atty. Gen., Dyersburg, for appellee.

## OPINION

TATUM, Judge.

The defendant, Billie Bullington, was convicted of two counts of aggravated assault and one count of driving while intoxicated. Punishment was fixed at 3 years imprisonment on each of the aggravated assault convictions. He was sentenced to serve 11 months and 29 days in the County Jail and to pay a fine of $250 for the offense of driving while intoxicated. The defendant was sentenced as a Range I, Standard offender, and it was directed that his sentences be served concurrently in the County Jail. The trial judge also ordered periodic confinement so as to allow the defendant to continue with his employment.

On this appeal, the defendant presents issues attacking the sufficiency of the evidence, the constitutionality of T.C.A. § 55–10–406(e), and the trial judge's interpretation of the aggravated assault statute, T.C.A. § 39–2–101. The defendant also says that the trial judge should have suppressed evidence showing the results of a blood/alcohol test and should have granted him probation. We find no merit in the issues presented and affirm the judgment below.

We first address the issue attacking the sufficiency of the evidence. The State's proof established that on the night of April 22, 1984, Reed Riley was traveling

south on Highway 51 in Dyer County, with his wife and two children, when he observed a vehicle coming up behind him at a rapid rate of speed. The vehicle, which turned out to be a Jeep driven by the defendant, barely missed Riley's vehicle as it passed him. Riley next observed that the Jeep had been maneuvered across the median into the northbound lane of Highway 51, but was still going south. Two cars swerved to miss the defendant's Jeep, but the Mazda behind one of those cars had no chance to swerve and was hit head-on by the defendant. A deputy sheriff on routine patrol also observed the defendant's vehicle going south in the northbound lane of Highway 51. After the accident, tire tracks which crossed the median of the highway and led directly to the defendant's Jeep were observed.

In addition, two witnesses observed beer cans, some of which were in the defendant's Jeep and others of which were on the road, having been thrown from the Jeep. The defendant smelled very strongly of alcohol and it was noted that he looked as if he had been drinking heavily or had been drinking for some time. A blood sample taken from the defendant shortly after the accident contained ethyl alcohol in a quantity of 0.24 grams percent.

The driver's side of the Mazda in which John Wells and Melissa Jessup were riding was extensively damaged, and its front also sustained damage. Wells, the driver of the Mazda, had his leg pinned beneath the dashboard, and it took 45 minutes plus the use of extrication tools to free him. Wells sustained a concussion; a broken wrist; a dislocated hip; a broken right leg; two cracked ribs; lacerations on his left arm; and stitches in both knees. He required two weeks of hospitalization.

As a result of the accident, John Wells missed work and experienced pain. At the time of the trial, he was still very much bothered by bad pains in his hip, which would sometimes not function correctly. He also had a very severe pain in his wrist and continued to be bothered by his knee.

He explained that he was still unable to be active.

The other victim, 19-year-old Melissa Jessup, received a broken collarbone and facial lacerations. Although she had no permanent physical impairment, she did retain scars. She testified that she had suffered extreme pain as a result of the accident.

We find evidence upon which a rational trier of fact could be convinced beyond a reasonable doubt of the defendant's guilt of two counts of aggravated assault and one count of driving while under the influence of alcohol. The evidence meets the standard required by Rule 13(e), T.R.A.P.

■ In the next issue, the defendant says that the trial court should have granted his motion to suppress the evidence of the blood/alcohol test. He first says that he did not consent to the taking of the test. The trial judge, after a suppression hearing, found to the contrary. The investigating highway patrolman testified that the defendant refused to sign a consent form furnished by the hospital, saying that he did not desire to sign anything or make any statement until he talked with his lawyer, although the defendant "gave the hospital consent to take the blood." The nurse who drew the blood from the defendant testified that "he just said that he didn't want to sign the form but it was okay for me to draw the blood." The defendant's testimony on the point was equivocal. He admitted that he told the state trooper that he would give the blood but that he would not sign the paper without talking to his lawyer. He testified that he did not "resist," and that he told the state trooper that he "guessed" that the blood would be taken whether he gave permission or not.

We find abundant material evidence to support the trial court's finding that the defendant gave permission to draw the blood sample. The trial judge's findings of fact are binding upon this court. *State v. Pritchett*, 621 S.W.2d 127 (Tenn.1981); *State v. Yarbro*, 618 S.W.2d 521 (Tenn. Crim.App.1981).

■ In the next issue, the defendant says that T.C.A. § 55–10–406(e) is unconstitutional. This subsection provides that the results of any chemical analysis of the alcoholic or drug content of the defendant's blood is admissible in evidence in aggravated assault and homicide cases when taken by lawful means, although not in compliance with § 55–10–406. Although this issue has been rendered moot by our sustaining the trial judge's finding that the defendant gave his consent to the taking of the blood sample, we think the statute is constitutional. The State may compel submission to the testing if the officer has reasonable grounds to believe that the motorist is intoxicated. See *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

In another issue, the defendant says that the aggravated assault statute (T.C.A. § 39–2–101) was not enacted to cover cases involving the driving of motor vehicles, unless there was intent on the part of the driver to strike or harm the alleged victim. T.C.A. § 39–2–101(b)(1) expressly provides contrary to the contention of the defendant:

"Any person who attempts to cause or causes serious bodily injury to another willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life is guilty of the offense of aggravated assault regardless of whether the victim is an adult, a child, or the assailant's spouse."

The same statute defines "serious bodily injury" as "bodily injury which involves a substantial risk of death, unconsciousness; extreme physical pain; protracted and obvious disfigurement; or protracted loss or impairment of the function of a bodily member or organ." T.C.A. § 39–2–101(a)(2). The record reveals that the injuries inflicted meet this definition.

■ Thus, by the express terms of the statute defining the crime of aggravated assault, intentional injury is not required.

Rather, conducting one's self recklessly under circumstances manifesting extreme indifference to the value of another human life is sufficient. This issue is without merit.

■ Finally, the defendant contends that the trial judge abused his discretion in refusing to suspend the entire sentence. The trial judge ordered that the three sentences be served concurrently in the County Jail. The court ordered periodic confinement with work release from Monday through Friday for the first nine months of the concurrent sentences. After the first nine months, the balance of the sentences was probated. After a lengthy sentencing hearing, the trial judge carefully and conscientiously considered the provisions of T.C.A. § 40–21–104(a)(1). The trial judge found that the defendant was remorseful of his conduct and had only a minor criminal record. He had a good potential for rehabilitation; a good job; and a rather stable family situation.

On the other hand, the trial court noted that the offenses were committed while the defendant was highly intoxicated and that two people were seriously injured. The court expressed concern with the evidence that Dyer County had an unusually high rate of driving while intoxicated offenses and the need for deterrence of these offenses.

The burden is on the defendant to prove that the trial judge abused his discretion. *Frazier v. State*, 556 S.W.2d 239 (Tenn. Crim.App.1977). The record reveals to the contrary; that the trial judge very carefully and conscientiously exercised discretion. He discussed all aspects of the case at great length and concluded that the disposition made would best serve the defendant and the public.

It results that the judgment of the trial court is affirmed.

WALKER, P.J., and BYERS, J., concur.