# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 21, 2000 Session

## STATE OF TENNESSEE v. SEAN IMFELD

**Direct Appeal from the Criminal Court for Knox County**
**No. 66960    Mary Beth Leibowitz, Judge**

---

**No. E2000-00094-CCA-R3-CD**
**February 27, 2001**

---

The defendant, Sean Imfeld, pled guilty to one count of driving under the influence and five counts of aggravated assault by recklessness, a Class D felony. See Tenn. Code Ann. § 39-13-102(d). The trial court originally imposed an effective sentence of 12 years but later, following a motion to modify the sentence, reduced the term to nine years. In this appeal of right, the defendant presents the following issues for review, all of which relate to sentencing: (1) whether the trial court misapplied statutory enhancement factors; (2) whether the trial court erred by imposing consecutive sentences; and (3) whether the sentence imposed violated the purposes and intent of the Sentencing Reform Act of 1989. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY, J., joined. JOSEPH M. TIPTON, J., filed a concurring opinion.

Mark E. Stephens, Knox County Public Defender; Robert C. Edwards, Assistant Public Defender; and Paula R. Voss, Assistant Public Defender, for the appellant, Sean Imfeld.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Patricia Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On July 31, 1997, Jeffrey Hensley, Sr., was driving from a church event with his wife, Yvonne Hensley, and their six children when the family's 1988 Ford Econoline van was struck from behind by a car driven by the defendant. Mr. Hensley testified that when struck, the front of the van tilted and "started rolling uncontrollably." While making his way through the wreckage, Hensley discovered that his wife's leg was pinned underneath the vehicle. With the aid of several others, he freed his wife and checked on his children. When certain that his family was safe, Hensley went to the defendant's vehicle to offer help. He was eventually able to pull the door latch in order to free

the defendant.  Afterward, Hensley and his family were taken to the hospital for treatment.

Mr. Hensley received light bruises along the right side of his body.  Ms. Hensley suffered minor abrasions and a foot injury.  The injuries to the Hensley children, who were listed by age, were as follows: (1) a cut along the forehead and minor neck pain sustained by the 16-year-old son, Jeffrey Jr.; (2) major cuts along the face of the eight-year-old son, Jamar; (3) three cuts along the forehead of the five-year-old son, Joshua; (4) major cuts and gashes requiring skin graft surgery, sustained by the four-year-old daughter, Jessica; and (5) minor bruises received by the three-year-old son, Justin Lake. The Hensleys' eight-month-old baby, Jarvis, sustained no injuries.

The defendant entered pleas of guilt as follows:

| Count | Offense | Victim |
|-------|---------|--------|
| 1 | DUI | |
| 5 | Aggravated assault | Yvonne Hensley |
| 8 | Aggravated assault | Joshua Hensley |
| 10 | Aggravated assault | Jeff Hensley, Sr. |
| 12 | Aggravated assault | Jamar Hensley |
| 14 | Aggravated assault | Jeff Hensley, Jr. |

At the sentencing hearing, John Baker, a minister and retail sales manager at Fleet Tire Company, where the defendant worked, described the defendant as a reliable and honest worker. He testified that the defendant had never had any problems with drugs or alcohol at work.   Mr. Baker, who began counseling the defendant after an arrest on an unrelated charge, stated that the defendant had shown remorse for the accident.

The defendant, who was hospitalized for a little more than a day as a result of the accident, could not recall any of the events surrounding the accident or how it occurred.  While acknowledging that he had a second DUI offense shortly after the accident, the defendant maintained that it was not until a year after the accident that he realized the extent of the injuries caused to the Hensley children.  He claimed that since then, he no longer drinks alcohol or associates with those who do.

At the conclusion of the hearing, the trial court imposed consecutive sentences of four years each for three of the aggravated assault convictions and concurrent sentences of three years each for the others. The 11 months, 29 days for the DUI offense was also ordered concurrent, for an effective sentence of 12 years.  Later, the trial court modified the sentence, reducing the three four-year sentences to three years each.  The three aggravated assault convictions were again ordered to be served consecutively, for a revised effective sentence of nine years.

I

The defendant initially argues that the trial court erred in calculating the lengths of each sentence due to the misapplication of statutory enhancement factors.  When there is a challenge to

the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

In calculating the sentence for a Class D felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

For a Range I offender, the possible range for the offense of aggravated assault by recklessness, a Class D felony, is from two to four years. See Tenn. Code Ann. § 40-35-112(a)(4). The maximum sentence for a first offense DUI, a Class A misdemeanor, is 11 months and 29 days.

The trial court found the following enhancement factors applicable, but did not specify whether the factors applied to each offense:

        (1)     The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

        (3)     the offense involved more than one (1) victim;

        (4)     a victim of the offense was particularly vulnerable because of age or physical or mental disability;

(6)     the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;

(10)    the defendant had no hesitation about committing a crime when the risk to human life was high;

(16)    the crime was committed under circumstances under which the potential for bodily injury to a victim was great; and

(18)    a victim, under § 39-15-402, the statute defining aggravated child abuse and neglect, suffered permanent impairment of either physical or mental functions as a result of the abuse inflicted.

Tenn. Code Ann. § 40-35-114.

In mitigation, the trial court considered the following: (1) The defendant's prior criminal history is not significant; (2) the defendant has expressed a willingness to make amends; and (3) the defendant has led a "tough" life. See Tenn. Code Ann. § 40-35-113(13).

Trial courts must make separate findings as to which enhancement factors apply to which convictions. State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994). That was not done in this case. Because the trial court may have intended to apply each of the cited enhancement factors to all of the defendant's convictions, the court will consider the propriety of each enhancement factor as to each offense.

A. Aggravated Assault

First, the defendant argues that the trial court's application of Tenn. Code. Ann. § 40-35-114(3), that the offense involved more than one victim, constituted double enhancement. Because each count is specific to one victim only, the defendant contends that it is a legal impossibility for there to be more than one victim to any aggravated assaults for which he is charged. We disagree. Although the defendant was convicted of five counts of aggravated assault, there were two victims of the accident on behalf of whom charges were never brought: four-year-old Jessica Hensley, who required skin graft surgery, and three-year-old Justin Lake Hensley. As such, the enhancement factor was properly applied to each aggravated assault offense.

Second, the defendant argues that the trial court erred by applying Tenn. Code Ann § 40-35-114(4), that a victim of the offense was particularly vulnerable because of age or physical or mental disability. Because the state did not present specific proof of the victims' vulnerability or show that it was a factor in the commission of the crime, we must agree. The vulnerability enhancement factor relates more to the natural physical and mental limitations of the victim than to the victim's age. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The state bears the burden of showing that specific

limitations made a victim particularly vulnerable or that the vulnerability was a factor in the commission of the crime. Id. Here, there was only a showing that some of the victims were young. Proof of age, standing alone, is insufficient to establish particular vulnerability. See State v. Collins, 986 S.W.2d 13 (Tenn. Crim. App. 1998). Thus, Tenn. Code Ann. § 40-35-114(4) may not be applied to any of the aggravated assault offenses.

Third, the defendant argues that the trial court erred by applying Tenn. Code Ann. § 40-35-114(6), that the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great. Initially, we note that serious bodily injury is not an element of any of the aggravated assault charges to which the defendant pled in this case. As to each of the five victims on behalf of whom the state brought charges, the defendant pled guilty to aggravated assault by use of a deadly weapon. The defendant submits, however, that the record is devoid of any proof that the injuries sustained by the victims were great. With one exception, we must agree. Proof of serious bodily injury will always constitute proof of particularly great injury. See State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994). "Serious bodily injury" means bodily injury which involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. Id. If a victim suffers significant "emotional injures" which require counseling it would be proper to use this factor. See State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994). Although the Hensley's four-year-old daughter, who was thrown from the rear of the passenger van during the accident, suffered serious bodily injury, she was not one of the victims named in the indictment. As to the victims named in the indictment, only Jamar Hensley is demonstrated in the record to have sustained serious bodily injury. Eight-year-old Jamar sustained significant lacerations around his left eye. A professional photograph taken of the Hensley family in 1998 shows visible and permanent scarring. There is obvious disfigurement to the area of injury. There is no such evidence with regard to the remaining victims. Moreover, while there is evidence to suggest that there may have been emotional injuries, there was no testimony regarding the severity of such injuries or if counseling was required. Photographs introduced at the sentencing hearing also show damage to the Hensley's van, but there was no evidence in the record as to the value of the van, the extent of its damage, or who may have been the title owner of the vehicle. As such, Tenn. Code Ann. § 40-35-114(6) may only be applied to the conviction for the aggravated assault of Jamar Hensley, Count 12 of the indictment.

Fourth, the defendant contends that the trial court erred by applying Tenn. Code Ann. § 40-35-114(10), that the defendant had no hesitation about committing a crime when the risk to human life was high, and 40-35-114(16), that the crime was committed under circumstances where the potential for bodily injury to a victim was great. He argues that neither factor is applicable because both are inherent in the offense of aggravated assault. Although this court has previously held that enhancement factors (10) and (16) generally cannot be attached to the offense of aggravated assault, they may be applied when persons other than the victim are nearby and might be subject to injury. See State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995). Here, there were two children who were injured as a result of the accident who were not named as victims in the indictment. Because other individuals were subject to injury, the trial court properly applied both factors to the defendant's aggravated assault convictions.

-5-

Finally, the defendant argues that the trial court erred by applying Tenn. Code Ann. § 40-35-114(18), that a victim suffered permanent impairment of either physical or mental functions as a result of the abuse inflicted, because the factor applies only in cases of child abuse and neglect. See Tenn. Code Ann. § 39-15-402. We agree. The state contends that the trial court never intended to apply enhancement factor (18), but used the phrase "suffered permanent impairment" in a different context. In either case, Tenn. Code Ann. § 40-35-114(18) can only be used for victims of aggravated child abuse and neglect and, as such, cannot be applied in this case.

In sum, the trial court properly applied enhancement factors (1) and (3) and properly applied factors (10) and (16) to each of the sentences for aggravated assault. The trial court also properly applied enhancement factor (6) to the sentence for the aggravated assault of Jamar Hensley. The trial court misapplied factors (4) and (18) and also misapplied enhancement factor (6) in four of the five convictions. The presumptive sentence for each conviction is two years, the minimum in the range. There are four enhancement factors applicable to four of the convictions and five enhancement factors applicable to the remaining conviction. Under the circumstances, enhancement of the aggravated assault sentences to three years was appropriate. While the trial court considered the defendant's background and willingness to make amends as mitigating factors, it did not assign any relative weight to those factors. It did, however, assign great weight to enhancement factor (10), thus warranting a sentence above the minimum. Accordingly, the term of each sentence for aggravated assault is appropriate at mid-range or three years.

B. DUI

In misdemeanor sentencing, the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. The sentence must be specific and consistent with the purposes of the 1989 Act. Tenn. Code Ann. § 40-35-302(a) -(b). No greater than 75 percent of the sentence should be fixed for service by a misdemeanor offender; however, a DUI offender may be required to serve the full one hundred percent of his sentence. Tenn. Code Ann. § 40-35-302(d); Palmer v. State, 902 S.W.2d 391, 393-94 (Tenn. 1995). In determining the percentage of the sentence to be served, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d).

Upon service of the required percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate for the defendant. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The statutory scheme is designed to provide the trial court with continuing jurisdiction and a wide latitude of flexibility in the misdemeanor case. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Appellate review of misdemeanor sentencing is de novo with a presumption of correctness. See State v. Troutman, 979 S.W.2d 271 (Tenn. 1998).

The trial court imposed a term of 11 months and 29 days, with a 75 percent release eligibility, for the defendant's DUI conviction. As with his aggravated assault sentences, the defendant challenges the trial court's application of certain enhancement factors.

The trial court properly applied enhancement factor (3), that the offense involved more than one victim. Evidence at the sentencing hearing demonstrated that there were at least eight victims of this accident. The court misapplied enhancement factor (4), that a victim of the offense was particularly vulnerable because of age or physical or mental disability. The state presented no proof of any victim's particular vulnerability or how such vulnerability could have factored into the commission of the crime. The trial court properly applied enhancement factor (6), that the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great. As already noted, four-year-old Jessica Hensley received severe lacerations and had to undergo skin graft surgery. The trial court properly applied enhancement factors (10) and (16). There is evidence that the defendant endangered the lives of at least eight people. Finally, enhancement factor (18), that a victim suffered permanent impairment of either physical or mental functions as a result of the abuse afflicted, only applies in cases of child abuse and neglect.

Here, the trial court properly applied enhancement factors (1), (3), (6), (10) and (16) to the defendant's DUI offense. The mitigating factors applied to the defendant's aggravated assault sentences would be applicable as well. Even though two enhancement factors may have been misapplied, the remaining enhancement factors would clearly outweigh the three mitigating factors. The trial court sentenced the defendant to 11 months and 29 days at 75 percent. The circumstances of the offense warrant the sentence imposed.

## II

Next, the defendant argues that the trial court erred by requiring that three of the five sentences for aggravated assault be served consecutively. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . .
> . the aggregate maximum of consecutive terms must be reasonably
> related to the severity of the offenses involved.

Id. at 230.

The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. The 1989 Act is, in essence, the codification of

the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted [himself] to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation; or
>
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); see also State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

---

[1] The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

In Gray, our supreme court ruled that consecutive sentencing could be imposed upon the dangerous offender, considered the most subjective of the classifications and the most difficult to apply, only when other conditions are present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." Wilkerson, 905 S.W.2d at 938.

The trial court determined that the defendant was a dangerous offender within the meaning of Tenn. Code Ann. § 40-35-115(4). As required by Wilkerson, the trial court concluded that consecutive sentencing was warranted by the necessity to protect the public because of the severity of the offense:

> [Defense attorney], you said [the defendant] wants rehabilitation. He has not sought any formal rehabilitation, although, to his credit, he sought out Mr. Baker, and has more than willingly worked with Mr. Baker, who is very kind to do that, and to offer him counseling, and to offer him support. That is something that, I think, has kept [the defendant] going all this time.
>
> [The defendant] has not sought out AA, even though it is within a possible distance.
>
> Mr. Baker has sought to find ways of helping [the defendant]. But unfortunately, [the defendant] has not.
>
> And I have a problem with that. And the problem I have with that is, [the defendant] has sort of turned a blind eye to this. He knew that there was bodily injury. He knew that there was severe injury. He knew what the charges were. He didn't look to find out what exactly he had done, and what he needed to do to correct it.
>
> He didn't seek the help that he should seek.
>
> And based on that I find that [the defendant] is a significant danger to the community under the statute as well.
>
> There are three children involved in this accident.

-9-

With regard to those children's injuries, and they are in counts 8, 12, and 14, [defendant], you are sentenced to four (4) years in the State Penitentiary in each of those counts.[2]

Those counts will run consecutively to one another, for a total effective twelve year sentence.[3]

\* \* \*

While [the defendant] might . . . do this on work release and a number of other things, the fact that [the defendant] has picked up new charges, as you have said, not once, but twice, both driving charges, one of which, at least, he's alleged to committed a driving under the influence, concerns this Court mightily.

For the grace of God . . . the child that was thrown out of the vehicle, had she landed on her head, might be dead, or so impaired that her mama would have to carry her the rest of her life.

\* \* \*

I cannot justify in my heart giving [the defendant] a sentence that is not to serve in the light of the new charges, in light the severity of the injuries in this case.

In our view, the trial court appropriately considered the applicable sentencing principles, the order that three of the defendant's aggravated assault sentences be served consecutively is entitled to a presumption of correctness. The burden is on the defendant to rebut that presumption.

The defendant asserts that consecutive sentences are improper because the trial court failed to consider evidence that he is no longer a danger to the public. We disagree. In support of his argument, the defendant contends that the trial court did not consider his potential for rehabilitation. In the hearing to modify the defendant's sentence, however, the trial court noted that the defendant had a full-time job and had received some help from Mr. Baker. Nevertheless, the court found the defendant to be a danger to the public:

[The defendant], other than staying home and going to work, took no steps of his own to attempt to correct [his problems with alcohol], and, indeed, wound up with other charges.

---

[2]As indicated, each of the sentences was later reduced to three years.

[3]The modified effective sentence is nine years.

* * *

> And so that the record is clear, because this appellate court will get this record, it's the court's belief that [the defendant] is, as he sits here today, while extremely remorseful, and never intentionally would have done any of this, unable to control his behavior in such a way that he cannot be safe in the outside community.

* * *

> Regretfully, as a result of that the Court found, and still finds, that [the defendant] is a danger to the community under his present circumstances, and was at the time of the commission of this offense. In addition, being a danger, no doubt, to himself

The trial court found that the sentences imposed were necessary to protect society and were proportionate to the seriousness of the offense. Because the trial court followed the mandates of Wilkerson, the presumption that the trial court imposed a lawful sentence prevails in this instance. See State v. Ashby, 823 S.W.2d at 169. In our view, there is a reasonable relationship between the sentence, as modified, and the gravity of the crimes. As such, this issue is without merit.

### III

As his final argument, the defendant submits that the trial court erred because his sentence does not properly adhere to the purposes and intent of the Sentencing Reform Act of 1989. In particular, he claims that no defendant found guilty of DUI and vehicular assault by recklessness has ever been so harshly sentenced. The defendant has cited cases involving similar circumstances.

The defendant first cites State v. Smith, 776 S.W.2d 141 (Tenn. Crim. App. 1989). In Smith, the defendant, who struck three pedestrians with his car, was charged with a DUI, leaving the scene of an accident, and three counts of aggravated assault. The trial court imposed a sentence of five years confinement, followed by a five-year period of probation. That sentence was modified to a term of split confinement with one year in the Davidson County workhouse followed by a four-year period of probation.

In State v. Bullington, 702 S.W.2d 580 (Tenn. Crim. App. 1985), the defendant drove his jeep at a high rate of speed in the wrong lane of the highway. He was convicted of a DUI and two counts of aggravated assault. One victim suffered a concussion and received other injuries requiring a two-week hospitalization, a second victim suffered a broken collarbone, and a third experienced severe pains in his wrist, hips, and knees. The defendant was sentenced to three years on each aggravated assault and 11 months and 29 days for the DUI. Because all sentences were ordered to be served concurrently, the defendant's effective sentence was three years. The trial judge also ordered periodic confinement so as to allow the defendant to continue his employment.

In <u>State v. Glenda Primeaux</u>, No. 4 (Tenn. Crim. App., at Jackson, Jan. 20, 1988), the defendant was convicted of four counts of aggravated assault and a DUI. She had veered across the wrong side of the road and struck a vehicle occupied by one adult and three children. She was sentenced to four concurrent five-year terms on the assault charges and a term of 11 months and 29 days on the DUI charge. The defendant appealed a denial of probation. This court reversed and remanded because the trial judge erred by failing to give any reasons for denying an alternative sentence. <u>See</u> Tenn. Code Ann. § 40-35-209(c).

In <u>State v. Danny Ray Webber</u>, No. 188 (Tenn. Crim. App., at Knoxville, Feb. 11, 1988), the defendant pled guilty to one count of aggravated assault and one count of DUI. The victim, who was in a coma for 16 months, died a few days before sentencing. For the DUI conviction, the defendant received a sentence of 11 months and 29 days and a fine of $250.00. The trial court ordered him to serve 48 hours of the sentence and placed the defendant on probation for the balance of the term. For the assault, the defendant received a sentence of two years in the Department of Correction. Probation was denied.

In <u>State v. Richard D. Reagan</u>, No. 03C01-9901-CC-00019 (Tenn. Crim. App., at Knoxville, July 26, 1999), the defendant pled guilty to public intoxication, DUI, a Habitual Motor Vehicle Offender Act offense (HMVO), and two counts of aggravated assault. The trial court sentenced him to 10 days for the public intoxication, 11 months and 29 days for the DUI, one year for the HMVO, and three years for each of the aggravated assaults. The trial court ordered these sentences to be served consecutively, but the DUI and HMVO sentences were to be served concurrently with each other and consecutively to all other sentences. Thus, the defendant received an effective sentence of seven years and 10 days. The trial court granted immediate intensive probation on all counts. Afterward, the defendant violated the terms of his probation and the trial court ordered that the remainder of his sentence be served in the Department of Correction.

Here, the defendant contends that the sentence imposed was disparate – greater than the sentences imposed upon any of the other defendants identified in his brief. He argues that the trial court violated the statutory principles governing sentencing. We disagree. None of the sentences in the other cases involved five counts of aggravated assault. The defendant in <u>Primeaux,</u> who was convicted of four counts of aggravated assault, was sentenced to five years, but the sentence was remanded because the trial judge did not state any reasons for denying probation. So, the result is unknown. In any event, the probation officer recommended probation because the defendant was middle-aged, was a first time offender, had children at home, and suffered from a chronic medical condition. By contrast, the defendant in this case has a criminal history, does not suffer from any physical ailments, and committed a second DUI shortly after this incident. None of the cases cited by the defendant involve aggravating circumstances. Here, the defendant's sentence was enhanced because he had a prior criminal record and because he inflicted serious injuries.

The Criminal Sentencing Act was passed to "[a]ssure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentences," Tenn. Code Ann. § 40-35-102(2), which clearly implies that some differences are justified, depending on the particular crime and the individual criminal. <u>State v. Moss</u>, 727 S.W.2d 229, 235 (Tenn. 1986). This is consistent with the

case by case approach contemplated by the Act.  Id.  Reasonable discretion in sentencing decisions is required to impose the sentence the defendant deserves in relation to the crime committed. Tenn. Code Ann. § 40-35-102(1). The result may be some disparity in sentencing, but each case will be treated fairly and consistently based on the procedures and principles that guide sentencing determinations and an assessment of the facts and circumstances presented.  Moss, 727 S.W.2d at 235.  In our view, the trial court acted in compliance with the 1989 Act.

GARY R. WADE, PRESIDING JUDGE